ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JULIO ARTURO FIGUEROA RAMIREZ<br><br>Recurrido<br><br>V.<br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO**;<br>DEPARTAMENTO DE JUSTICIA DE PUERTO RICO, REPRESENTADO POR EL SECRETARIO, HON. CÉSAR MIRANDA RODRÍGUEZ: LA POLICÍA DE PUERTO RICO, REPRESENTADA POR EL SUPERINTENDENTE, HON. JOSÉ CALDERO LÓPEZ Y POPULAR AUTO, LLC<br><br>Peticionario | KLCE202400971 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala de Guayama<br><br>Sala: 303<br><br>G AC2016-0093<br><br>Sobre:<br><br>IMPUGNACIÓN DE CONFISCACIÓN |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 21 de octubre de 2024.

Comparece ante nos, el Estado Libre Asociado de Puerto Rico (en adelante, "el Estado"). Su comparecencia es a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida el 5 de marzo de 2024 y notificada el 6 de marzo de 2024, por el Tribunal de Primera Instancia, Sala Superior de Guayama. Mediante la referida determinación dicho tribunal declaró *No Ha Lugar* la "*Moción en Solicitud de Orden,"* presentada por el Estado.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del recurso de *certiorari.*

**I.**

La controversia que hoy nos ocupa tiene su origen en la "*Demanda*" presentada el 22 de junio de 2016 por el señor Julio Arturo Figueroa

Ramírez (en adelante, "señor Figueroa"). Esta fue incoada en contra del Departamento de Justicia de Puerto Rico (en lo sucesivo "Departamento"). El referido señor indicó, que su vehículo de motor fue confiscado el 26 de abril de 2016 por un Agente de la Policía de Puerto Rico. Expresó, que el 30 de mayo de 2016 fue notificado sobre la "*Orden de Confiscación*." Comunicó, que la expedición de dicha orden se fundamentó en el alegado uso de su vehículo para la comisión de tres (3) delitos. A la luz de lo anterior, argumentó que el referido vehículo no fue utilizado para cometer acto criminal alguno. Por lo cual, solicitó la declaración de nulidad de la confiscación. Consecuentemente, peticionó la devolución de su vehículo.

En respuesta, el 16 de septiembre de 2016, el Secretario del Departamento presentó una "*Contestación a Demanda*." En esencia, admitió que ocupó el 26 de abril de 2016 un vehículo de motor que aparecía inscrito a nombre del señor Figueroa. Indicó, que el motivo de la confiscación se debió a que dicho vehículo fue utilizado para la comisión de unos hechos delictivos. Adujo, que una confiscación se presumía legal. Por lo tanto, le correspondía al señor Figueroa rebatir la referida presunción.

Posteriormente, el 19 de junio de 2017, el Departamento presentó un "*Aviso de Paralización de los Procedimientos por virtud de la Presentación de la Petición por el Gobierno de Puerto Rico bajo el Título III Promesa*." Mediante esta, peticionó que se paralizaran los procedimientos del presenta caso a tenor de lo dispuesto en la legislación federal "*Puerto Rico Oversight, Management, and Economic Stability Act*" (conocida como la "Ley Promesa"). Particularizó, que la petición de quiebra tenía el efecto automático, inmediato y directo de paralizar toda acción civil. Ante ello, el 11 de diciembre de 2017, el foro recurrido notificó una "*Sentencia de Paralización*" A través de esta ordenó la paralización de los procedimientos según peticionado.

Así las cosas, el 16 de junio de 2020, el Departamento presentó una "*Moción en Solicitud de la Continuación de los Procedimientos.*"[1] Así pues, peticionó la continuación de los procesos conforme a las limitaciones dispuesta en la Ley Promesa. A tenor de lo anterior, alegó, que el único remedio al que tenía derecho el señor Figueroa, de concederse alguno en su favor, sería la devolución de la propiedad confiscada. Acto seguido, el 9 de agosto de 2021, el señor Figueroa presentó una "*Demanda Enmendada.*" Ello, a los efectos de incluir como parte del litigio a Popular Auto LLC (en adelante, "Banco Popular"), debido a que dicho banco tenía un gravamen sobre el vehículo en controversia.

En reacción, el 27 de diciembre de 2021, el Banco Popular presentó una "*Contestación a Demanda Enmendada.*" Admitió, que tenía sobre el vehículo en cuestión un gravamen de venta condicional. De igual modo, indicó que no había sido notificado de la "*Orden de Confiscación.*" Esto, en contravención de su derecho a un debido proceso de ley. A raíz de ello, sostuvo que la confiscación era nula. En consecuencia, peticionó la devolución del vehículo de motor y el pago de la cantidad de $16, 197.45. Expresó, que dicha cifra representaba el valor de tasación del vehículo confiscado.

Posteriormente, el 11 de mayo de 2022, el Banco Popular presentó una "*Moción Solicitando Sentencia Sumaria.*" Sostuvo, que el señor Figueroa dejó de cumplir con los pagos del contrato de venta condicional cuyo objeto era el vehículo en cuestión. Ante ello argumentó, que existía una deuda vencida, líquida y exigible por la cantidad de $16, 197.45., suma, de la que era acreedor. Reiteró, que no había sido notificado sobre la confiscación del referido vehículo, ello a pesar de que el 19 de abril de 2016 presentó ante el Departamento de Transportación y Obras Públicas la correspondiente solicitud de gravamen sobre el vehículo confiscado. Así

---

[1] Acompañó su moción con los siguientes documentos: "*Sixth Omnibus Order Granting Relief From The Automatic Stay,*" emitida el 9 de noviembre de 2018 por la Juez Laura Taylor Swain; "*Title III Stay Modification With Respect To Forfeiture Actions*" del 9 de noviembre de 2018.

pues, peticionó al foro recurrido que dictara sentencia sumaria a su favor, mediante la cual declarara nula la confiscación. En consecuencia, solicitó la devolución del vehículo confiscado o el pago de su equivalente en valor por la cantidad de $14,000.00.

En reacción, el 6 de febrero de 2023, el Estado presentó una "*Moción en Cumplimiento de Orden.*" En esencia, expresó que no tenía obligación de notificar al Banco Popular sobre la confiscación en controversia, dado que a la fecha de 20 de mayo de 2016 no surgía de la investigación realizada gravamen alguno a favor del referido banco.

Así las cosas, el 11 de abril de 2023, el foro recurrido notificó una "*Sentencia Sumaria.*" Mediante esta, declaró nula la confiscación por falta de notificación adecuada al Banco Popular de la "*Orden de Confiscación.*" En consecuencia, le ordenó a la Junta de Confiscaciones que consignara en el tribunal el monto de la tasación del vehículo de motor.

Luego de advenir final y firme la "*Sentencia Sumaria,*" el 23 de junio de 2023, el Estado presentó una "*Moción en Solicitud de Orden.*" En síntesis, argumentó que conforme al "*Order and Judgment Confirming Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Buildings Authority*" ("*Orden de Confirmación*"), el señor Figueroa debía presentar un "*proof of claim.*" A luz de lo anterior, peticionó al foro recurrido que le ordenara al señor Figueroa evidenciar la presentación del referido "*proof of claim*" en el caso federal bajo el Título III. Arguyó, que en ausencia de dicha evidencia el presente caso se debía desestimar con perjuicio. En el caso contrario, según adujo, la presentación de un "*proof of claim*" debidamente evidenciado le otorgaba la facultad de decidir si la presente reclamación sería liquidada a través de este mismo caso o mediante el proceso de resolución de reclamaciones del caso de Título III.

Por su parte, el 21 de julio de 2023, el Banco Popular presentó una "*Oposición a Moción en Solicitud de Orden.*" Sostuvo, que tanto el vehículo

confiscado como su equivalente en dinero nunca fueron propiedad del Estado. Toda vez que, el rol del Estado en las confiscaciones se limitaba a la custodia de lo confiscado. Por consiguiente, argumentó que dicho vehículo no podía ser parte de la deuda del Estado bajo el proceso de quiebra federal. Agregó, que la confiscación había sido declarada nula mediante una determinación que ya era final y firme. Así pues, arguyó que dicha confiscación no generó consecuencias jurídicas. Por lo cual, era improcedente que se paralizaran los procesos en cuestión. Finalmente, peticionó que se declarara *No Ha Lugar* la "*Moción en Solicitud de Orden.*"[2]

En atención a los escritos presentados, el 6 de marzo de 2024, el foro recurrido notificó la "*Resolución*" que nos ocupa. Mediante esta, declaró *No Ha Lugar* la "*Moción en Solicitud de Orden.*" Inconforme, el 21 de marzo de 2024, el Estado presentó una oportuna "*Moción de Reconsideración de Orden del 5 de marzo de 2024.*" Ésta fue declarada *No Ha Lugar* por el foro recurrido con fecha de notificación de 9 de agosto de 2024.

Aún inconforme, el 9 de septiembre de 2024, el Estado presentó ante nos una "*Petición de Certiorari.*" Mediante esta, esbozó el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al no requerirle a la parte recurrida evidenciar la presentación de un *proof of claim* ante la Corte de Título III, contrario a lo dispuesto en la *Orden de Confirmación* y el *Plan de Ajuste.*

**II.**

**A.**     ***Certiorari*:**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un

---

[2] El 6 de febrero de 2024, el Banco Popular presentó una "*Moción Informativa y Solicitud de Orden.*" Indicó, que se comunicó con la aseguradora del señor Figueroa. Sobre el particular, expresó que la referida aseguradora estaba en espera de la adjudicación de la "*Moción en Solicitud de Orden,*" presentada por el Estado y de la resolución final del caso GM2023CV00114 (Popular Auto LLC v. Julio Arturo Figueroa Ramírez y otros), para proceder con el pago de lo reclamado. De igual modo, en su comparecencia ante este Tribunal, el Banco Popular reiteró sus conversaciones con la aseguradora del señor Figueroa para lograr que se emitiera un pago a su favor luego de concluirse el presente pleito. A la luz de lo anterior, argumentó que las alegaciones del Estado carecían de mérito, dado que, la controversia existente ante el foro recurrido no afectaba las arcas del referido Estado.

tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.*

La Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, delimita los criterios para la expedición de un auto de certiorari postsentencia. Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145; *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, supra, dispone los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**G.** Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank v. ACBI,* 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Id.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Id.; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. Id. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**B.     Confiscación:**

La confiscación es "el acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de ciertos delitos." *Universal Ins., y otro v. ELA y otros*, 211 DPR 455, 463 (2023); *Reliable v. Depto. de Justicia y ELA*, 195 DPR 917, 924 (2016): véanse también, *Doble Seis Sport TV v. Depto. Hacienda*, 190 DPR 763 (2014); véase también, *Rodríguez Ramos v. E.L.A.*, 174 DPR 194, 202 (2008). En nuestra jurisdicción, el proceso de confiscación está regulado por la *Ley Uniforme de Confiscaciones de 2011*,

Ley 119-2011, la cual establece como política pública del Estado Libre Asociado de Puerto Rico "el crear mecanismos que faciliten y agilicen el proceso de confiscación de bienes muebles e inmuebles…" Ley 119-2011, Art. 2; *Coop. Seg. Múlt. et als. v. ELA et al.*, 209 DPR 796, 805 (2022). Asimismo, el citado Art. 2 reafirma la naturaleza *in rem* de las confiscaciones, independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza.[3] De este modo, en su Art.8 expone que:

> El proceso de confiscación será uno civil dirigido contra los bienes e independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado. 34 LPRA sec. 1724e.

Sobre la naturaleza civil del proceso confiscatorio, nuestro Tribunal Supremo ha expresado que, "[i]ndependientemente de la naturaleza civil de la confiscación los estatutos confiscatorios deben interpretarse restrictivamente ya que, a pesar de tratarse de una acción de naturaleza civil, la forma en que es aplicada la sanción, el procedimiento que se utiliza y las defensas permitidas en éste, reflejan un propósito punitivo." *Santiago v. Supte. Policía de PR*, 151 DPR 511, 515 (2000).

Ahora bien, en lo relacionado a los vehículos de motor, nuestro Más Alto Foro ha resuelto que la confiscación de un vehículo constituye una privación de la propiedad que obliga al Estado a cumplir con las garantías mínimas del debido proceso de ley. *Reliable v. Depto. Justicia y ELA*, supra, págs. 924 - 925. La notificación adecuada es uno de los preceptos del debido proceso de ley en su modalidad procesal. *Íd.*

En este contexto, el Art. 13 de la precitada Ley preceptúa la manera en que se debe notificar el hecho de la confiscación. Dicho artículo dispone lo siguiente:

> El Director Administrativo de la Junta notificará la confiscación y la tasación de la propiedad a las siguientes personas:

---

[3] Sabido es que el proceso de confiscación tiene dos modalidades: *in personam e in rem*. En cuanto a la modalidad *in rem*, la misma se define como "un proceso civil en el que se va directamente contra la cosa a ser confiscada, separándolo procesalmente del encausamiento criminal contra el presunto autor del delito." *Coop. Seg. Mult. v. E.L.A.*, 180 DPR 655, 668-669 (2011).

[…]

c) en los casos de vehículos de motor, se notificará, además, al dueño, según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas y al acreedor condicional que a la fecha de la ocupación tenga su contrato inscrito.

[…]

34 LPRA sec. 1724j.

Según ha expresado nuestro Tribunal Supremo, dicha notificación tiene el propósito de salvaguardar los derechos constitucionales de una parte interesada en la propiedad confiscada, de manera que se le pueda brindar la oportunidad para que presente y pruebe todas las defensas válidas pertinentes a su reclamo. *Reliable v. Depto. Justicia y ELA*, supra, pág. 925; véase también, *López v. Secretaria*, 162 DPR 345, 352 (2004). Por otra parte, en aquellos casos en los que el Tribunal decrete la ilegalidad de la confiscación, el Art. 19 de esta Ley establece que la Junta de Confiscaciones devolverá la propiedad al demandante. No obstante, en caso de que se haya dispuesto dicha propiedad, el Estado Libre Asociado de Puerto Rico le pagará el importe de la tasación al momento de la ocupación más el interés legal prevaleciente. 34 LPRA sec. 1724p.

**C.    Ley Promesa:**

El Congreso de Estados Unidos, conforme a la facultad que le otorga la Cláusula Territorial de la Constitución de Estados Unidos, Art. IV, Sec. 3 Const. EE. UU., LPRA, Tomo 1, aprobó el Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 USCA sec. 2101 *et. seq.* El fin principal de esta legislación fue establecer el proceso de restructuración de la deuda de Puerto Rico. *Vélez et al. v. DE et al.,* 199 DPR 426 (2017) (Resolución) Voto particular de conformidad emitido por el Juez Asociado señor Martínez Torres, pág. 428. A tono con ello, el Título III de PROMESA autoriza y establece el procedimiento para que el gobierno de Puerto Rico pueda presentar una petición de quiebra. 48 USCA sec.

2161.[4] Conforme a lo anterior, la Sección 2161(a) incorporó a la referida disposición legal las Secciones 362 y 922 del Título II del Código de Quiebras Federal, 11 USCA sec. 362 y 922, las cuales traen consigo las paralizaciones automáticas de pleitos contra el deudor y su propiedad. Véase, *Lab. Clínico et al. v. Depto. Salud et al.* 198 DPR 791 (2017) (*per curiam*); *Lacourt Martínez et al. v. JLBP et al.* 198 DPR 786, 787 (2017) (*per curiam*).

La paralización automática es una de las protecciones instituidas en el Código de Quiebras, *supra*, para los deudores que se acogen a este. *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490 (2010). El objetivo principal de la paralización automática de pleitos es liberar al deudor de presiones financieras mientras se dilucida el procedimiento de quiebra. *Lacourt Martínez et al. v. JLBP et al., supra,* pág. 788. Así, el efecto de esta es detener los pleitos que involucren reclamaciones monetarias y que se estén llevando contra el deudor al momento de radicar la petición de quiebra o aquellas que hayan podido comenzar antes de la presentación de la petición de la quiebra. 11 USCA sec. 362(a).

La Sección 362(a)(1) y (2) del Código de Quiebras Federal, *supra,* dispone que una vez presentada la petición de quiebra se paraliza:

[ . . . ]

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim[5] against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

[ . . . ]

---

[4] En virtud del Título III de PROMESA, el 3 de mayo de 2017, el ELA presentó una petición de quiebra ante la Corte de los Estados Unidos para el Distrito de Puerto Rico.
[5] El Código de Quiebras Federal, *supra,* define "claim" como: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Los efectos de la paralización automática se manifiestan desde que se presenta la petición de quiebra, hasta que recaiga la sentencia final o hasta que el tribunal federal la deje sin efecto parcial o totalmente. *Marrero Rosado v. Marrero Rosado, supra,* pág. 491. Por tal razón, una vez presentada la petición de quiebra, los tribunales quedan privados de jurisdicción automáticamente, sin necesidad de ser notificados, y no pueden continuar atendiendo los casos en donde se esté reclamando contra el deudor que radicó la petición. Íd.

Los tribunales estatales y federales tenemos la facultad inicial de interpretar la paralización y su aplicabilidad en los casos ante nuestra consideración. *Lacourt Martínez et al. v. JLBP et al., supra,* pág. 788, citando a In Mid-City Parking, Inc., 332 B.R. 798, 803 (N.D. 111. 2005). En vista de ello, nuestro Tribunal Supremo ha interpretado que los casos que no involucran reclamaciones monetarias contra el estado no están paralizados. *Lacourt Martínez et al. v. JLBP et al., supra,* pág. 789.

El Voto particular de conformidad emitido por el Juez Asociado Señor Martínez Torres en *Reliable v. ELA et al.* 199 DPR 344, (2017) aclaró que la legislación federal aplicable prohíbe intervenir en los casos de confiscación que hayan comenzado antes de que el Gobierno de Puerto Rico presentara la petición de quiebra, porque se trata de una reclamación monetaria en su contra, las cuales quedaron paralizadas automáticamente al presentarse la petición de quiebra. *Reliable v. ELA et al.*, *supra*, a la pág. 345. Ahora bien, en lo pertinente a los hechos particulares de *Reliable v. ELA et al., supra, a la pág. 347,* el Juez Asociado Señor Martínez Torres afirmó expresamente lo siguiente:

> "La controversia que tenemos hoy ante nuestra consideración está paralizada claramente. Como ya mencionamos, el caso trata sobre la confiscación de un vehículo. <u>Se considera que hay una reclamación monetaria</u>, ya que <u>el vehículo pasó a ser parte del patrimonio del Estado desde que se confiscó</u>. **Solo dejaría de ser propiedad del Estado si prevaleciera la impugnación de la confiscación. De prevalecer la postura de Reliable Financial Services y Universal Insurance Company, el Estado tendría que devolver el vehículo o su equivalente en dinero.** <u>Como se solicita que se sustraigan bienes que ya están en el patrimonio del Estado, este caso está paralizado automáticamente y no nos corresponde determinar lo contrario.</u>" (Énfasis suplido)

Cabe señalar, que en el caso *Narváez Cortés v. ELA*, 199 DPR 821, 822 (2018)., el Juez Asociado Señor Martínez Torres, reafirmó sus anteriores expresiones mediante la emisión nuevamente de un Voto particular de conformidad. A esos efectos reiteró lo siguiente:

> El bien confiscado pasó a ser patrimonio del Estado, sujeto a devolución solamente si prevalece el recurrido. Su reclamación al efecto está paralizada, no porque "perjudique o interfiera" con el procedimiento de quiebra del territorio, sino porque afecta el patrimonio del deudor en quiebra, es decir, del Estado Libre Asociado de Puerto Rico. Véase *Reliable v. ELA et al.* 199 DPR 344, 345 (2017) (voto particular de conformidad). Por esa razón, el caso local de impugnación del bien que ya se confiscó está paralizado automáticamente, desde que el territorio se fue a quiebra. Esa paralización no depende de la "posición" o del parecer de ninguno de nosotros.

**D.     Proof of Claim, Orden de Confirmación y el Plan de Ajuste de la deuda de Puerto Rico:**

La sección 301 de la Ley Promesa incluye entre sus disposiciones la aplicabilidad de la sección 501 del United States Codes, 11 USCA sec. 501. Dicha sección establece que luego que se interponga una petición de quiebra, los acreedores del deudeor deben someter sus reclamaciones (proof of claim) a tenor con las disposiciones allí dispuestas. Véase, *Marrero Rosado v. Marrero Rosado*, supra, pág. 492-493. En lo pertinente, las referidas disposiciones leen como sigue:

> (a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.
> (b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.
> (c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim. 11 USCA sec. 501.

De esta manera, las personas que tengan un derecho de crédito contra el deudor, se someteran a la Jurisdicción de la Corte de Quiebras para establecer su acreencia. *Íd,* pág. 493. Consecuentemente, los interesados se enterarán de las reclamaciones entabladas contra el deudor y los acreedores se convertirán en participes de la eventual distribución. *Íd.*

De otra parte, el 18 de enero de 2022, se emitió en el caso *In re Commonwealth of Puerto Rico, Case. No. 17BK3283-LTS,* "*la Orden de Confirmación*". A través de ella la Corte de Distrito de Estados Unidos para

el Distrito de Puerto Rico confirmó el Plan de Ajuste de la Deuda, cuya fecha de efectividad fue fijada para el 15 de marzo de 2022. En lo pertinente, la Orden de Confirmación lee como sigue:

59. Injunction on Claims.

Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.

De igual modo, el Plan de Ajuste de la Deuda incluye la sección 92.2 sobre la liberación de las causas de acción. La referida sección reza:

92.2 Discharge and Release of Claims and Causes of Action:

(a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however,

that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan. For the avoidance of doubt, nothing contained herein or in the Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non- Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

(b) Except as expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

[…]

**III.**

Tras una revisión de la totalidad del expediente ante nos, concluimos no intervenir en los méritos del dictamen recurrido. Según esbozamos, la decisión de expedir un recurso de *certiorari* postsentencia es de naturaleza discrecional. Así pues, al orientar nuestra discreción según las

consideraciones de la Regla 40, *supra,* determinamos que la decisión recurrida, la cual al momento de ser cuestionada ya era final y firme, no es contraria a derecho ni exhibe prejuicio, parcialidad o error manifiesto. Ante ello, concluimos no expedir el auto de *certiorari* presentado.

**IV.**

Por los fundamentos expuesto y al amparo de la Regla 40, *supra*, determinamos *no expedir* el recurso de *certiorari* presentado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones